FORCIBLE DE-
TAINER.

## Breeding's heirs *vs* Taylor.

APPEAL FROM THE BRACKEN CIRCUIT.

CHANCERY.

## Taylor *vs* Breeding's heirs.

Case 16.

ERROR TO THE BRACKEN CIRCUIT.

*Ejectment. Possession. Restitution.*

June 20.

JUDGE BRECK delivered the opinion of the Court—which was suspended until the 7th October, when the suggestions of the parties were overruled, and suspension removed.

Subject of controversy.

IN 1834, the heirs of Nathaniel Breeding recovered a judgment in ejectment by default, upon the service of the common order, against Michael Morrell, the tenant in possession, and by a *habere facias possessionem*, subsequently evicted him. After eviction, Breeding's heirs leased to Morrell the whole tract claimed by them of a thousand acres, and continued him in possession. The judgment in ejectment was rendered at the May term of the Court, and at the August term following, the Court, on the motion of James Taylor, the landlord of Morrell, set aside the judgment, let him in as a defendant, and also made an order for the restoration of the possession to him. That proceeding upon the appeal of Breeding's heirs was reversed by this Court. The case is reported in (6 *Dana*, 226.) Prior to the reversal however, Taylor,

under the order aforesaid, had been restored to the possession, and thereupon Morrell took a lease from him, and was continued in possession.    Subsequent to the reversal, Breeding's heirs, by a writ for forcible detainer against Morrell, the term of his lease under them having expired, again obtained the possession, and again leased to Morrell, and continued him in possession. This was on the 2d August, 1838, and on the day following, Taylor exhibited his bill in Chancery against Breeding's heirs, praying for a new trial in the ejectment, and also an injunction restraining further proceedings thereon, which was awarded him.    In April, 1840, Taylor commenced an action of ejectment; and in August following, upon notice to Breeding's heirs, moved the Court for a restoration of the possession of all the land, of which Breeding's heirs, under the writ of *habere facias* upon their judgment in ejectment, had obtained the possession, except about twenty seven acres, which was at the time in the actual occupancy of Morrell.

The suit in Chancery, and the motion for a restitution, were heard together, upon an agreement of the parties, that all the testimony taken in either, or in the ejectment, and all the exhibits were to be read in each case. The Circuit Judge dismissed Taylor's bill without costs, but sustained his motion, and ordered the possession to be restored to him, "of all the land which he held outside of the enclosure of his tenant, Morrell;" and also gave him a judgment for his costs.

To reverse the judgment upon the motion, Breeding's heirs have appealed to this Court; and Taylor prosecutes a writ of error, and seeks a reversal of the decree dismissing his bill.

The judgment upon the motion will first be considered. Breeding's claim

The land sought to be recovered by Breeding's heirs of right. in their ejectment, is not designated in their demise by specific boundaries, but described generally as a thousand acres of wood land, and a thousand of orchard, &c. being part of John Harris' survey of 5,000 acres.    But it appears that they claimed under a deed to their ancestor, from the heirs of John Harris, one thousand acres

Taylor's claim
of right.

by marked boundary. The deed purports to have been made in 1804.

Taylor claims under two grants—one to Ash, Morgan, &c., and the other to John Crittenden. The grant to Crittenden issued upon the survey of John Harris for 5,000 acres, subsequent to the date of the deed from Harris' heirs, of whom Crittenden and wife were part, to Breeding. There is much conflicting testimony in regard to the possession of the 1,000 acres in contest. On the part of Breeding's heirs, it is contended that the possession was taken under their claim, even before the date of their deed, and so continued till 1823 or 1824, when Taylor obtained it from their tenant. On the other hand, Taylor contends that Breeding's heirs have never had any possession, they nor their ancestor.

In regard to the relative merits of the respective claims of the parties, we deem it unnecessary to decide or enquire. Nor need we decide further in regard to the possession, than to say, that Morrell, at the commencement of Breeding's ejectment, was upon the 1,000 acre tract as the tenant of Taylor, but that his lease and possession were limited to his actual enclosure, containing about 27 acres. Morrell's close was the only improvement upon the tract. But Taylor, in virtue of his actual possession by his agent, of other portions of these two grants, under which he held, claimed to be in possession of all the Breeding tract, outside of the enclosure of Morrell.

Finding no person upon the land but Morrell, Breeding's heirs in their ejectment, proceeded against him alone, and the judgment recovered by them, was in effect against him, and him alone.

A judgment in ejectment ag'st only one tenant authorizes a divestiture of his possession only, and not the possession of others not sued.

In the execution of the *habere facias*, they had no right to evict or to disturb the possession of any other person. And we do not understand that the Sheriff did dispossess any other individual, nor in point of fact, that he changed the possession, except so far as it was held by Morrell. He turned him out, and put in the Breedings in his place. He says in his return he found no other person residing upon, or in possession of the land, and that he delivered possession of the land and premises to the plaintiff's

The holder of the legal title, upon being let into possession under a judgment against one tenant who has intruded into possession, becomes possessed to the

attorney.  The only way he delivered posssssion, was by the turning out Morrell, the only person upon the land, and putting the Breedings or their attorney in his place. This it was his duty to do, and in doing it there was no abuse of the process.  The rights and possession of Taylor were not by any act of the Sheriff, affected outside of the actual enclosure of Morrell.

Yet if the Breedings had, by length of possession or otherwise, the better possessory right to the whole 1,000 acre tract, and claimed possession to that extent, upon dispossessing Morrell and acquiring his possession, their possession, in that event, would be coextensive with the boundaries of their whole claim.  But if Taylor had the better possessory title, their possession would be limited to the actual enclosure of Morrell.  The entry made by them and actual possession acquired, so far as Morrell had it by authority of law, would be as available, and have the same effect in regard to their constructive possession as to the residue of the tract, as if they had entered without a judgment or the aid of the officer.  It was held, in the case of *Hord* vs *Bodley*, (5 *Litt.* 89,) and the doctrine is well settled, that if the junior patentee enter upon the interference with an elder grant, and afterwards the senior patentee enter upon the interference, the possession of the whole interference will be in him, or certainly of all except the actual enclosure of the junior patentee.

So if the senior patentee enter outside of the interference, but claiming possession thereof, and the junior patentee afterwards enters upon the interference, his possession will be confined to his actual enclosure.

If Taylor then, having the better claim, had possession outside of Breeding, but claimed also the possession of that tract, the possession of the Breedings would not extend beyond their actual close.  The lease made by them to Morrell did not enlarge their possession.  It did not oust Taylor if he had the better title.

The reversal of the order awarding restitution of the possession to Taylor, and under which he obtained it, left Morrell the tenant of the Breedings; or at any rate the proceeding for forcible detainer and the lease thereupon, placed him in the same situation he occupied before Tay-

BREEDING'S HR'S
*vs*
TAYLOR.

extent of his title unless another is possessed of the better possessory title, in which event his possess'n would be restricted to the possession under the judgment.

A junior patentee entering upon the elder, obtains possession coextensive with his enclosure only.

The quashal of a writ of restitution and a restoration of possession given under it, places the parties, in respect to their legal rights as they stood before the emenation of the writ.

lor obtained the order for restoring him the possession. It seems to us, therefore, that there was no abuse of the process of the Court in the execution of the writ of *habere facias possessionem*. Whether Taylor had the better title or not, his possession outside of the enclosure of Morrell, was not affected by any act of the officer in the execution thereof, except consequentially as before explained by the eviction of Morrell and the delivery of his close and possession to the Breedings. Whether Taylor or Breeding's title was the best, it is not necessary for us to enquire or decide. It follows that the judgment of the Circuit Judge, upon the motion of Taylor for restitution, was erroneous, and it is, therefore, reversed and the cause remanded, with directions to dismiss the motion at the plaintiff's costs.

Whether the Circuit Judge was right in dismissing Taylor's bill for a new trial, will now be considered.

The Circuit Judge was of opinion that there was no fraud on the part of the heirs of Breeding or their counsel in obtaining the judgment by default against Morrell. As to the heirs, they were non-residents, and there is no proof that their counsel exerted any influence upon the tenant or agent of Taylor, or had any agency whatever in inducing them to withhold from him the fact of the institution of the ejectment. So far from it, Morrell was told expressly, shortly after the ejectment was commenced, by one of Breeding's counsel, that he ought to inform Taylor of the fact.

*A plaintiff in ejectment is not bound to give any other notice of the institution of his suit than to serve the declaration and common order.*

Taylor and his counsel were no doubt ignorant of the existance of the ejectment till after the time when the judgment by default was rendered. But it appears, and Taylor so alledges in his bill, that he was informed by the counsel for the Breedings, that suit would be immediately commenced, if he declined the proposition for a compromise. He did decline and in anticipation of the suit, aspoke to counsel to defend in the event it should be brought. The suit was instituted; Taylor received no notice from Morrell or from his agent residing near the land in controversy, and was himself out of the State at the term when the judgment was obtained. It was not the duty of the counsel of Breeding's heirs to give him

or his counsel notice of the institution of the suit. It is sufficient that they had no agency, in any way, in withholding from them the information. The records of the Court contained the evidence of the pendency of the suit and to them Taylor and his counsel should have resorted for information. But it is contended that the counsel of Taylor were deluded by the manner in which the ejectment was docketed. It was docketed as an action of ejectment and against Morrell, and in the name of Doe or Fin upon the demise of Garram or Gaggam, &c. Garram and wife were part of the heirs of Breeding. Besides, it appears upon the testimony of all the counsel for the plaintiff and the Clerk, that there was no design or intention to deceive or delude either Taylor or his counsel by the style of the suit or the manner of docketing it, and that it was entirely accidental that it was so styled and docketed.

The docket showed it to be an ejectment and against Morrell, the tenant of Taylor. It was not the duty of counsel or the Clerk to name all the lessors upon the docket, or to state that they were Breeding's heirs.

In view of the whole case, we think the decree of the Circuit Judge ought not to be disturbed, and it is, therefore, affirmed.

*Harlan & Craddock* for Breeding's heirs: *Gates & Lindsey* for Taylor.